# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JUAN LOPEZ, | ) |
| Plaintiff, | ) |
| | ) No. 14 CV 7497 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| SALEH OBAISI, ROYCE BROWN-REED, WENDY DYBAS, MICHAEL LEMKE, JAMIE PITTS, WEXFORD HEALTH SOURCES, INC., and JOHN OR JANE DOE, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of defendants Michael Lemke and Royce Brown-Reed to dismiss the claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is denied as to Lemke and granted as to Brown-Reed.

## BACKGROUND

Juan Lopez sues Dr. Saleh Obaisi; Wendy Dybas, R.N.; Jamie Pitts, R.N.; Michael Lemke, former Warden of Stateville Correctional Center ("Stateville"); Royce Brown-Reed, former administrator of the health care unit at Stateville; an unidentified registered nurse; and Wexford Health Sources, Inc. ("Wexford") under 42 U.S.C. § 1983 for their alleged violations of his Eighth Amendment rights. The amended complaint alleges that on July 3, 2013, while incarcerated at Stateville, Lopez sustained an injury to his left hand. (First Am. Compl. ¶ 12.) Lopez was seen by a physician at Stateville (who is not named as a defendant), and two days later, he was transported to the emergency department at St. Joseph Hospital, where he underwent x-rays that revealed "comminuted fractures of the left distal second metacarpal

extending to the metacarpal phalangeal joint space." (*Id.* ¶¶ 12-14.) Lopez was discharged from the hospital that day with a prescription for Norco as needed for pain. (*Id.* ¶ 14.) Plaintiff's claims arise from his follow-up medical care at Stateville over the next six months, which he alleges amounted to deliberate indifference to a serious medical need because he did not obtain a follow-up orthopedic consult within two to three days of his hospital discharge and was not seen by an orthopedist until fifty-five days later; his numerous complaints of pain and inadequate care were ignored; and he was not provided occupational therapy.

The amended complaint contains three counts: deliberate indifference to a serious medical need against Obaisi, Dybas, Pitts, and the unidentified nurse (Count I); deliberate indifference to a serious medical need against Lemke and Brown-Reed (Count II); and a *Monell* claim against Wexford (Count III).[1] Defendants Lemke and Brown-Reed move to dismiss the claim against them.

## DISCUSSION

### A.    Legal Standards

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to

---

[1] The amended complaint also asserts a Count IV against Wexford for respondeat superior, which the Court dismissed with prejudice on June 16, 2015.

relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

"Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs." *Townsend v. Cooper*, 759 F.3d 678, 688 (7th Cir. 2014) (citing, *inter alia*, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). "To state an Eighth Amendment claim based on deficient medical care, a plaintiff must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). For a prison official to be personally liable, he must have participated in some way in the alleged constitutional violation. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003).

"Non-medical defendants . . . can rely on the expertise of medical personnel. . . . [I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be

3

justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (stating that a prison warden "is entitled to relegate to the prison's medical staff the provision of good medical care"). However, non-medical officials can be chargeable with deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner. *Arnett*, 658 F.3d at 755. While non-medical defendants cannot "simply ignore an inmate's plight[,] . . . mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Id.* The plaintiff must allege more than a mere communication to a prison official anywhere in the corrections hierarchy. *Vance*, 97 F.3d at 993. "The plaintiff must demonstrate that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755. (internal quotation marks omitted). Once an official is alerted of such a risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard. *Id.* at 756 (internal quotation marks omitted).

**B.     Analysis**

Lemke and Brown-Reed contend that plaintiff has failed to adequately allege that they participated in the alleged constitutional violations.

### 1.     Michael Lemke

The amended complaint alleges the following regarding Lemke. On July 15, 2013, August 17, August 23, August 26, and September 11, plaintiff filed emergency grievances to Lemke's attention that complained of inadequate medical care. (First Am. Compl. ¶¶ 23, 48, 49, 52, 57.) The grievances are attached to the complaint as part of Exhibit C, are signed by Lemke, and indicate that he reviewed them and determined that the matters were not of an emergency

4

nature. (*Id.*, Ex. C.) The only other allegation concerning Lemke is that on July 24, 2013, plaintiff "spoke with" Lemke "in F-house and explained to Lemke that he was in extreme pain and required medical attention. Plaintiff informed Lemke of the grievances he had filed and his previous conversations with various nurses and other health care staff. Lemke advised Plaintiff that he (Lemke) would 'take care of it today' and that Plaintiff would get medical attention. Plaintiff did not receive medical attention on that date." (*Id.* ¶ 29.) Plaintiff alleges that he did see nurses on July 26 and 27, 2013, but did not receive the kind of pain medication he was seeking. (*Id.* ¶¶ 34-35.)

By themselves, Lemke's refusals to consider the emergency grievances as true emergencies would not be enough to state a deliberate indifference claim against Lemke. *See Brown v. Wexford Health Sources*, No. 13 C 4419, 2014 WL 257552, at *3 (N.D. Ill. Jan. 23, 2014). But plaintiff also alleges that he spoke with Lemke about plaintiff's "extreme pain," the grievances he had submitted, and his need for medical attention, and that Lemke promised to take care of it that day, yet plaintiff was not seen by medical personnel until two days later. These are allegations of personal involvement outside of the grievance process that are sufficient to plausibly state a claim of deliberate indifference. *See, e.g.*, *Arrieta v. Wexford Health Sources, Inc.*, No. 13 C 6765, 2015 WL 1326395, at *2 (N.D. Ill. Mar. 20, 2015). Accordingly, the motion to dismiss is denied as to the claim against Michael Lemke.

### 2. Royce Brown-Reed

As to Brown-Reed, plaintiff relies on the following allegations in response to the motion to dismiss. On July 23, 2013, plaintiff sent a letter to Stateville's health care unit (of which Brown-Reed was the administrator) complaining that he had been in constant pain since the July 3, 2013 injury to his left hand and had not been seen by an orthopedist as recommended by the

emergency room physician at St. Joseph Hospital. (First Am. Compl. ¶ 28.) On September 19, 2013, in Brown-Reed's presence, defendant Obaisi examined plaintiff. Obaisi told plaintiff to "initiate self-physical therapy without providing Plaintiff instruction for the same." Plaintiff's physical therapist in the health care unit advised Obaisi and Brown-Reed that "this was not recommended as it could lead to Plaintiff's condition worsening." (*Id.* ¶ 61.) On October 17, 2013, the physical therapist saw plaintiff in the health care unit and "documented that Plaintiff required occupational/hand therapy to resolve his left hand problems," "ordered that plaintiff continue physical therapy 2-3 times per week until occupational/hand therapy could be established," and "on information and belief, . . . informed Dr. Obaisi and Brown-Reed that Plaintiff required occupational therapy which [the physical therapist] did not have the capabilities to provide." (*Id.* ¶ 70.) On October 27, 2013, the physical therapist again saw plaintiff in the health care unit, "recommended that Plaintiff be referred for hand therapy five times a week to resolve his left hand injury," "recommended that Plaintiff continue physical therapy 3 times a week," and "on information and belief, . . . informed Dr. Obaisi and Brown-Reed of the need for Plaintiff to undergo occupational/hand therapy five times a week." (*Id.* ¶ 71.) As of January 9, 2014, when plaintiff was transferred from Stateville to Pontiac Correctional Center, he had not received any "occupational/hand therapy" as the physical therapist and an orthopedist had recommended. (*Id.* ¶ 75.)

These allegations are insufficient to state a claim that Brown-Reed was deliberately indifferent to plaintiff's serious medical needs. There are no allegations that Brown-Reed received or reviewed the July 23 letter, let alone concluded from it that plaintiff had a serious medical need and ignored that need. As for Brown-Reed's alleged knowledge of the recommendations for plaintiff to undergo occupational therapy, there are no allegations that

6

Brown-Reed was aware of plaintiff's condition and knew that the recommendations went unheeded, thus prolonging any pain plaintiff was in, and that she therefore was deliberately indifferent to plaintiff's alleged plight. In other words, plaintiff fails to set forth a causal connection between Brown-Reed and the conduct of a subordinate that allegedly caused plaintiff injury and to which Brown-Reed allegedly turned a blind eye. Accordingly, Count II will be dismissed without prejudice as against Brown-Reed.

## CONCLUSION

The motion of defendants Michael Lemke and Royce Brown-Reed to dismiss the claim against them [46] is denied as to Michael Lemke and granted as to Royce Brown-Reed. Count II of the amended complaint is dismissed without prejudice as to Royce Brown-Reed. In the event that plaintiff believes that he can cure the deficiencies identified above as to the claim against Brown-Reed, he is given until January 6, 2016 to file a second amended complaint. If none is filed by that date, the Court will dismiss the claim against Brown-Reed with prejudice.

**SO ORDERED.**  ENTERED: December 22, 2015

_____
**JORGE L. ALONSO**
**United States District Judge**

7